**Melvin MOSS, Plaintiff–Appellant,**

v.

**PARKS CORPORATION, Defendant–Appellee. (Two Cases)**

**Nos. 92–1354, 92–1475.**

United States Court of Appeals, Fourth Circuit.

Argued Nov. 30, 1992.

Decided Jan. 28, 1993.

As Amended March 3, 1993.

Ralph Ogden, Wilcox & Ogden, P.C., Denver, CO, argued (Joseph A. Mooneyham, Harris & Graves, P.A., Greenville, SC, on the brief), for plaintiff-appellant.

Gray Thomas Culbreath, Yolanda Coker Courie, Collins & Lacy, Columbia, SC, argued, for defendant-appellee.

Before RUSSELL and WILKINSON, Circuit Judges, and MORGAN, United States District Judge for the Eastern District of Virginia, sitting by designation.

## OPINION

MORGAN, District Judge:

The Plaintiff in this case, Mr. Melvin Moss, suffered severe burns when fumes from paint thinner he was using erupted into flames. The Plaintiff brought suit against defendant Parks Corporation ("Parks"), the paint thinner's manufacturer, alleging five causes of action based upon a failure to warn pursuant to the Federal Hazardous Substances Act's ("FHSA") labeling requirements found at 15 U.S.C.A. § 1261(p)(1)(F) (West Supp. 1992). Parks moved for summary judgment on the basis that the Plaintiff's counts of failure to warn were preempted by the FHSA and its regulations promulgated at 16 C.F.R. § 1500 *et seq.* (1991). The district court granted Parks' motion, finding the paint thinner had been properly labeled in compliance with federal law. This Court agrees that the paint thinner was properly labeled in accordance with the applicable federal standards and thus affirms the judgment of the district court.

## I.

The Plaintiff, a resident of South Carolina, purchased 100% mineral spirits paint thinner manufactured by the defendant Parks. On March 16, 1989, the Plaintiff alleges he was injured while using the paint thinner to clean paint spills in a bedroom he was refinishing in his house. The Plaintiff testified that he read the front and back of the can prior to using the product. (Supp.J.A. 100). The label contained the following warnings: "DANGER," "COMBUSTIBLE," and "Keep away from heat and open flame." (J.A. 1). The Plaintiff poured two pints of the paint thinner on the floor. There was a kerosene heater in another room across the hall, but the Plaintiff testified that he believed the heater was off while he was painting and cleaning. The Plaintiff's expert witnesses testified that the paint thinner created a "mist" that wafted across the hall to the room where the kerosene heater was located. According to the Plaintiff's experts, the "mist" was ignited by the kerosene heater's pilot lighter and exploded into flames. The resulting flash fire burned a substantial portion of the Plaintiff's body.

The Plaintiff brought this diversity action against Parks on December 7, 1990 and filed an amended complaint on January 21, 1992. The Plaintiff alleged five causes of action, three of which are based upon a failure to warn pursuant to the FHSA's labeling requirements located at 15 U.S.C. § 1261(p)(1)(F). Specifically, count I alleged Parks misbranded its paint thinner in violation of 15 U.S.C. § 1261 *et seq.;* counts II and III alleged that Parks' noncompliance with federal law constituted negligence *per se* under both federal and state law; count IV alleged Parks was strictly liable under state law; and count V realleged his products liability count based entirely on South Carolina law. The Plaintiff admits count V is preempted by § 1261, and the Court finds that count IV is similarly preempted.

The Plaintiff maintained that the paint thinner was sold in a defective condition and was unreasonably dangerous because the label did not adequately warn against the hazards from fire and explosion. The Plaintiff argues that Parks violated the FHSA as its paint thinner's label failed to "state[ ] conspicuously ... precautionary measures describing the action to be followed or avoided...." 15 U.S.C. § 1261(p)(1)(F). That is, the Plaintiff contends that the presence of the warnings "DANGER," "COMBUSTIBLE," and "Keep away from heat and open flame" were insufficient to alert a layperson to the possibility of a flash fire from the thinner's "mist" coming in contact with the pilot light of a kerosene heater in another room.

Parks moved for summary judgment on the basis that the Plaintiff's claims of failure to warn were preempted by the FHSA and its regulations found at 16 C.F.R. § 1500 et seq.[1] On March 3, 1992, the district judge entered summary judgment in favor of Parks and dismissed the Plaintiff's suit in its entirety. The district court found the paint thinner had been appropriately labeled and therefore complied with federal regulations. (J.A. 85–87). The Plaintiff now appeals from the district court's order.

## II.

■ Orders granting summary judgment are reviewed under a de novo standard. Perini Corp. v. Perini Const., Inc., 915 F.2d 121 (4th Cir.1990). "Summary judgment is proper only when there is no genuine issue of material fact. F.R.Civ.P. 56(c). In other words, to grant summary judgment the Court must determine that no reasonable jury could find for the non-moving party on the evidence before it." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)).

The district court ruled that Parks

has complied with the requirements of the regulations as they apply in this case, inasmuch as we are dealing with the mineral spirits requirements of the regulations.

The court finds that the requirements are controlling ... as far as the requirements are concerned in this case, and that there is no issue of fact as to the defendant having complied with the regulations.

(J.A. 86). The district judge added that "the labeling requirements preempt any other causes of action and are controlling...." Id. On appeal, Parks argues that in enacting the FHSA, Congress completely preempted all common law tort actions. If this is so, then the Plaintiff's cause of action fails, whether or not Parks complied with the FHSA's regulations. Accordingly, the Court will first address the preemption issue before considering whether Parks' label satisfies the applicable federal standards.

## A.

■ The doctrine of preemption, the resolving of conflicts between federal and state law, flows from the Supremacy Clause of the Constitution. See U.S. Const. Art. VI, cl. 2. In Worm v. American Cyanamid Company, this Court held that

Preemption may occur on two bases, the first of which turns on discovering the intent of Congress. Congress may expressly provide that federal law supplants state authority in a particular field or its intent to do so may be inferred from its regulating so pervasively in the field as not to leave sufficient vacancy within which any state can act. See, e.g., Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 [67 S.Ct. 1146, 1152, 91 L.Ed. 1447] (1947). But even absent an express or implied congressional intent to preempt state authority in a field, state law is nevertheless preempted by operation of law to the extent that it

---

1. Parks raised a cross appeal on the issue of the district court's failure to conduct an in camera hearing to compel production of three letters provided by Moss' attorneys to one of Moss' expert witnesses. As this Court affirms the district court's entry of summary judgment against Moss, the Court need not consider the merits of Parks' cross appeal.

actually conflicts with federal law. *See Wisconsin Public Intervenor v. Mortier,* —— U.S. ——, ——, 111 S.Ct. 2476, 2482, 115 L.Ed.2d 532 (1991).

970 F.2d 1301, 1305 (4th Cir.1992) (citations omitted). The issue before the Court in this case is whether Congress intended to preempt the regulations of hazardous substances to such a degree as to preclude claimants from suing private parties for money damages for alleged violations of the FHSA under either the statute itself or through a state law tort action.

▮ The FHSA was enacted in 1960. The purpose of the law was to "provide nationally uniform requirements for adequate cautionary labeling of packages of hazardous substances which are sold in interstate commerce and are intended or suitable for household use." House Comm. On Interstate and Foreign Commerce, Federal Hazardous Substances Labeling Act, H.R.Rep. No. 1861, 86th Cong., 2d Sess. 2 (1960), *reprinted in* 1960 U.S.C.C.A.N. 2833, 2833. As enacted, the FHSA did not contain a preemption section. However, when the Act was amended in 1966, the legislative history discussed the impracticality of having the states produce potentially fifty different labels for a particular hazardous substance. Congress recommended "a limited preemption amendment which would encourage and permit states to adopt requirements identical with the federal requirements for substances subject to the Federal Act, and to enforce them to complement Federal enforcement...." House Comm. On Interstate and Foreign Commerce, Child Protection Act of 1966, H.R.Rep. No. 2166, 89th Cong., 2d Sess. 3 (1966), *reprinted in* 1966 U.S.C.C.A.N., 4095, 4096. The 1966 amendments added the following limited preemption provision which provides

> if a hazardous substance or its packaging is subject to a cautionary labeling requirement under section 2(p) or 3(b) [15 U.S.C. §§ 1261(p) or 1262(p)] designed to prevent against a risk of illness or injury associated with the substance, no State ... may establish or continue in effect a cautionary labeling requirement applicable to such substance or packaging and

> designed to protect against the same risk of illness or injury *unless such cautionary labeling requirement is identical to the labeling requirement under 2(p) or 3(b).*

15 U.S.C. § 1261 note (b)(1)(A) (emphasis added).

Thus, while it is clear that Congress intended to preempt state laws proposing labeling requirements not identical to the FHSA's regulations, the question remains whether that is sufficient to completely preempt state law tort actions for noncompliance with the federally mandated labels. This issue is a matter of first impression in this Circuit. However, this Court recently addressed the same issue under a similar federal statute. *Worm v. American Cyanamid Co.,* 970 F.2d 1301 (4th Cir.1992). In *Worm,* this Court considered whether the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA"), a pesticide licensing and labeling statute, 7 U.S.C.A. § 136 *et seq.* (West 1988), preempts state common law and tort actions alleging the mislabeling of pesticides. FIFRA provides that states may regulate the "sale or use" of federally registered pesticides to the extent such regulations do not permit any sale or use prohibited by FIFRA, but states "shall not impose or continue in effect any requirements for labeling or packaging *in addition to or different from* those required under this subchapter." *Id.* at 1305 (emphasis added). From this language, this Court concluded that "Congress did not reveal an intent to supplant state authority" beyond the area of labeling and packaging. *Id.* at 1306. "With respect to *labeling,* however, the federal law sets forth detailed requirements ... and directs that no additional or different labeling requirements may be imposed by the states." *Id.* (emphasis in original). This Court rejected the Plaintiff's argument which attempted to distinguish between state labeling requirements and common law tort actions, namely that state tort law "can lead only to the payment of damages and not to a required label alteration." *Id.* at 1307. This Court held the distinction illusory: "[i]f federal law mandates a specific label

and permits nothing additional or different, it can hardly be urged that a state tort duty based on a warning requirement that is more elaborate and different does not conflict. The manufacturer in that case cannot comply with both." *Id.*

*Worm* held that FIFRA preempted the Plaintiff's failure to warn claims as the Plaintiff sought "more elaborate or different" regulations than those promulgated pursuant to FIFRA. However, Worm also held that states may regulate so long as any state law is not different from the federal standard. *Id.* at 1308. This Court pointed out, for example, that "if the Maryland common law recognized a tort based on the breach of a federally imposed standard, the [plaintiff] would be able to pursue that claim without conflicting with federal law." *Id.* This Court concluded that

> if state law adopts or imposes a labeling requirement that is the same as the federal statute, even if the state law provides compensation or other remedies for a violation, so long as Congress chooses not to explicitly preempt the consistent law, it will not be said to be in conflict with federal law.

*Id.* at 1306 (citing *Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 256, 104 S.Ct. 615, 625, 78 L.Ed.2d 443 (1984) ("No doubt there is tension between the conclusion that safety regulation [of nuclear energy] is the exclusive concern of the federal law and a conclusion that a State may nevertheless award damages based on its own law of liability ... [but because] Congress intended to ... tolerate whatever tension there was ... [w]e can do no less.")).[2]

■ Applying the reasoning of *Worm* to the present case,[3] in an area of limited Congressional preemption such as the FHSA, a common law tort action based upon failure to warn may only be brought for non-compliance with existing federal labeling requirements. In actions such as the present one, if the plaintiff requests a label that is "more elaborate or different" than the one required by the FHSA and its regulations, the claim is preempted. However, it appears to the Court that unlike the plaintiff in *Worm*, the Plaintiff limits his allegations in counts I, II and III to Parks' failure to label the paint thinner in accordance to the regulations found in 15 U.S.C. § 1261(p) and 16 C.F.R. § 1500 *et seq.* As such, the Court disagrees with Parks that the Plaintiff's tort action based on counts I, II and III is preempted as a threshold matter without a factual undertaking on the merits of his claim. Accordingly, this Court holds that so long as a plaintiff

---

2. *See also Cipollone v. Liggett Group, Inc.*, —— U.S. ——, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). In *Cipollone*, the Supreme Court held that Federal Cigarette Labeling and Advertising Act of 1965, as amended by the Public Health Cigarette Smoking Act of 1969, preempted state law failure to warn claims against cigarette manufacturers to the extent they required a showing that manufacturers' post–1969 advertising should have included additional warnings. However, the Court held that this

> does not mean that [the 1969 act] pre-empts all common law claims.... [W]e must look to each of petitioner's common law claims to determine whether it is in fact pre-empted.... Thus, insofar as claims under either failure to warn theory require a showing that respondents' post–1969 advertising or promotions should have included additional, or more clearly stated warnings, those claims are pre-empted.

*Id.* —— U.S. at ——, 112 S.Ct. at 2621 (footnotes omitted). Thus, this Court's holding in *Worm* comports with that in *Cipollone*. To the extent Moss seeks "additional, or more clearly stated warnings," his claim is preempted by the FHSA.

To the extent Moss contends Parks failed to comply with federally-mandated labeling requirements, his claim is not preempted.

3. The United States Court of Appeals for the Ninth Circuit noted that "[t]he preemption issues arising under FHSA are identical to those arising under FIFRA." *Chemical Specialties Mfg. Ass'n Inv. v. Allenby*, 958 F.2d 941, 945 (9th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 80, 121 L.Ed.2d 44 (1992) (preemption clause in FHSA leaves cautionary labeling to the federal government while allowing states to regulate the sale and use of dangerous chemicals). We agree. The preemption language of the two statutes is nearly identical. FHSA provides that "no State ... may establish or continue in effect a cautionary labeling requirement applicable to such substance or packaging unless such cautionary labeling requirement is identical to the labeling requirement [of this section]." 15 U.S.C. § 1261 note (b)(1)(A). FIFRA mandates that "[s]uch state shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter." 7 U.S.C.A. § 136v(b) (West 1982).

charges a manufacturer with violations of FHSA-mandated labeling requirements and does not seek more stringent labeling requirements, the Plaintiff's common law tort action for damages is not preempted. This is the case as to counts I, II, and III. To the extent the Plaintiff seeks warnings that are more elaborate or different from those issued by Congress and promulgated by the CPSC, as in counts IV and V, the Plaintiff's claim is preempted. Whether this Plaintiff's remaining counts survive a summary judgment motion, however, is dependent upon whether there is a genuine issue of material fact as to Parks' compliance with federal law.

### B.

Having determined that the FHSA does not pre-empt a claim for non-compliance with federally-mandated labeling requirements, the Court now turns to the issue of Parks' compliance with those regulations with respect to the paint thinner warnings in issue. The label contained the following warnings: "DANGER," "COMBUSTIBLE," and "Keep away from heat and open flame." (J.A. 1). The district court granted Parks' motion for summary judgment on the grounds that the paint thinner's warnings complied with federal law. This Court agrees that the warning was in compliance with those regulations, and, accordingly, affirms the judgment of the district court.

Section 1261(p) of Title 15 of the United States Code defines a misbranded substance as follows:

The term "misbranded hazardous substance" means a hazardous substance ... intended, or packaged in a form suitable, for use in the household or by children, if the packaging or labeling of such substance is in violation of an applicable regulation issued pursuant to section 1472 or 1473 of this title or if such substance, except as otherwise provided by or pursuant to section 1262 of this title, fails to bear a label—

(1) which states conspicuously ... (C) the signal word "DANGER" on substances which are extremely flam-

mable, corrosive, or highly toxic; (D) the signal word "WARNING" or "CAUTION" on all other hazardous substances; (E) an affirmative statement of the principal hazard or hazards, such as "Flammable", "Combustible", "Vapor Harmful", "Causes Burns", "Absorbed Through Skin", or similar words descriptive of the hazards; (F) precautionary measures describing the action to be followed or avoided, except where modified by regulation of the Secretary pursuant to section 1262 of this title; . . . .

15 U.S.C. § 1261(p). The Plaintiff alleges Parks' label violates 15 U.S.C. § 1261(p)(1)(F) which requires labels to describe the precautionary measures to be followed or avoided, "except where modified by regulation of the Secretary pursuant to section 1262 of this title . . . ." Section 1262 grants the Secretary of the Consumer Product Safety Commission ("CPSC"), the administrative agency responsible for oversight of the FHSA, authority to promulgate "such reasonable variations or additional label requirements as he finds necessary for the protection of the public health and safety." 15 U.S.C.A. § 1262(b) (West Supp.1992).

The CPSC's labeling requirements for mineral spirits are found at 16 C.F.R. § 1500 *et seq.* The regulations require, *inter alia,* that "hazardous substances bear certain cautionary statements on their labels," such as "signal words," "affirmative statements of the hazards associated with a hazardous substance," and "statements of precautionary measures to follow." 16 C.F.R. § 1500.121(a)(1). "Labels that do not comply with this regulation may be considered misbranded." *Id.* Signal words include "DANGER," "WARNING," or "CAUTION." 16 C.F.R. § 1500.-121(a)(2)(vi). Examples of statements of principal hazards given in the regulations include "HARMFUL OR FATAL IF SWALLOWED," "VAPOR HARMFUL," "FLAMMABLE," and "SKIN AND EYE IRRITANT." 16 C.F.R. § 1500.-121(a)(2)(vii). Other cautionary material means all labeling requirements "required

by the Act or issued under the Act." 16 C.F.R. § 1500.121(a)(2)(viii).

The principal hazard associated with mineral spirits is combustibility. The CPSC has specifically defined the word "combustible" as applicable to "any substance having a flash point at or above 100° F (37.8° C) to and including 150° F (65.6° C)...." 16 C.F.R. § 1500.3(c)(6)(b)(iii). The flash point of Parks' 100% mineral spirits tested at 101.3° F (38.5° C), placing the paint thinner in the "combustible" category pursuant to the regulations. The Parks' paint thinner contains the warning "COMBUSTIBLE" in large face letters on the front of the can and thus satisfies the regulation's mandate of identifying the principal hazard associated with the product. (J.A. 1).

Under the terms of 16 C.F.R. § 1500.14, titled "Products requiring special labeling under Section 3(b) of the act," mineral spirits are classified as a hazardous substance requiring special labeling. *See* 16 C.F.R. § 1500.14(a)(3). The terms of 16 C.F.R. § 1500.14(b)(3)(ii) mandate that mineral spirits "shall be labeled with the signal word 'danger,' the statement or hazard 'Harmful or fatal if swallowed,' and the statement 'Call physician immediately.'" These warnings are all included in Parks' label. In addition to displaying the warning "COMBUSTIBLE," the front of Parks' can also states "DANGER," "HARMFUL OR FATAL IF SWALLOWED," and "See other cautions on back panel." (J.A. 1). The back of the can contains the warning "CAUTION" in large, bolded type. This is followed by the following specific warnings:

> If swallowed, do not induce vomiting. CALL PHYSICIAN IMMEDIATELY. Keep away from heat and open flame. Avoid prolonged contact with skin and breathing of vapor or spray mist. Do not transfer contents to unlabeled bottles or other containers. Close container after each use. Use only with adequate ventilation. KEEP OUT OF REACH OF CHILDREN.

*Id.* Thus, the paint thinner can recites the general warnings of 15 U.S.C. § 1261(p)(1) and all three of the specific warnings of 16 C.F.R. § 1500.14(b)(3)(ii).

The Court finds that Parks adequately complied with the regulations found in 15 U.S.C. § 1261(p)(1) and 16 C.F.R. § 1500 *et seq.* As to the Plaintiff's contention that 15 U.S.C. § 1261(p)(1)(F) required a more complete warning, such as "in order to use the product safely, it must never be used near an open flame," Appellant's Brief at 11, this Court disagrees that Congress intended courts and juries to displace the Secretary of the CPSC in filling in the interstices found in section 1261(p)(1)(F). Section 1261(p)(1)(F) implicates 15 U.S.C. § 1262(b) which only vests authority in the Secretary to promulgate "such reasonable variations or additional label requirements as he finds necessary for the protection of the public health and safety." For these reasons, the Court finds that Parks' 100% mineral spirits paint thinner was properly labeled in accordance with the applicable federal standards, and, therefore, the Plaintiff's claim of non-compliance must fail. Accordingly, since there is no genuine issue of material fact as to Parks' compliance with the federally mandated warnings, and counts I, II and III of the Plaintiff's complaint must be grounded upon the applicable federal statutes and regulations, the district court correctly granted summary judgment to Parks upon all five counts of the complaint.

### III.

The judgment of the district court is therefore

AFFIRMED.