[This opinion has been published in *Ohio Official Reports* at 69 Ohio St.3d 541.]

JENKINS, ADMR., APPELLEE, *v.* JAMES B. DAY AND COMPANY, APPELLANT.

[Cite as *Jenkins v. James B. Day & Co.*, 1994-Ohio-63.]

*Torts—Products liability—Federal Hazardous Substances Act provides limited preemption of state law in area of hazardous substances labeling—Action for inadequate labeling of hazardous substance covered by FHSA brought pursuant to state law that imposes labeling requirements identical to FHSA requirements is not preempted.*

The Federal Hazardous Substances Act provides a limited preemption of state law in the area of labeling of hazardous substances. A products liability action for inadequate labeling of a hazardous substance covered by the FHSA brought pursuant to state law that imposes labeling requirements identical to the requirements of the FHSA is not preempted.

(No. 92-1002—Submitted March 1, 1994—Decided July 13, 1994.)

APPEAL from the Court of Appeals for Franklin County, No. 91AP-1124.

————————————

{¶ 1} On March 8, 1990, the body of Julette Jenkins was found on the first floor of her rented house. The cause of her death was not readily apparent to those who found her body.

{¶ 2} The coroner's report following an autopsy indicated that death was caused by inhalation of methylene chloride. A container of a paint stripping product called Dayco Marine-Strip ("Marine-Strip") had been found in the attic of the house shortly after the death. The label of the container revealed that the product's principal active ingredient is methylene chloride. On the day the body was found, a window in the attic of the home was observed to be open about two inches, and indications that the decedent had recently been stripping paint from furniture in the attic were discovered.

**{¶ 3}** On the basis that methylene chloride fumes emanating from the Marine-Strip had caused Julette's death, her father, plaintiff-appellee Richard W. Jenkins, filed a wrongful death products liability action as the administrator of her estate. Named as defendant in the suit was appellant James B. Day and Company ("Day Co."), the manufacturer of Marine-Strip. In the complaint, Jenkins claimed, *inter alia*, (1) that the product was defectively formulated as defined in R.C. 2307.75(A); and (2), pursuant to R.C. 2307.76(A), that the label on the container of Marine-Strip was inadequate to warn users of the product's dangers or to instruct in its use, and that Day Co. was negligent in failing to affix an adequate label to its product.

**{¶ 4}** The front of the Marine-Strip container bore the following message:

"WARNING!

"HARMFUL IF INHALED OR SWALLOWED.

"SKIN AND EYE IRRITANT.

"See Other Cautions on Back Panel."

**{¶ 5}** On the back of the container appeared the following language:

"CAUTION--CONTAINS METHYLENE CHLORIDE--IF SWALLOWED INDUCE VOMITING--CALL PHYSICIAN IMMEDIATELY

"Keep away from heat, sparks and flame. Extinguish all flames, including pilot lights, and turn off stoves, ovens, heaters, electric motors, and other sources of ignition during use and until all vapors (odors) are gone. Contact with flame or hot surfaces may produce toxic gases. Avoid prolonged breathing of vapor or contact with skin or eyes. To avoid breathing vapors or spray mist, open windows and doors or use other means to ensure fresh air entry during application and drying. If you experience eye watering, headaches, or dizziness, increase fresh air, wear respiratory protection (NIOSH/MSHA TC 23C or equivalent) or leave the area. Do not transfer contents to unlabeled bottles or other containers. Close container after each use.

"FIRST AID: If swallowed, induce vomiting. Call Physician immediately. For eye contact, flush thoroughly with water and get prompt medical attention; for skin contact, wash thoroughly.

"NOTICE: Reports have associated repeated and prolonged occupational over exposure to solvents with permanent brain and nervous system damage. Intentional misuse by deliberately concentrating and inhaling vapors may be harmful or fatal. Prolonged breathing of vapors in poorly ventilated areas can be hazardous and even fatal to persons with heart disease.

"USE ONLY WITH ADEQUATE VENTILATION

"KEEP OUT OF REACH OF CHILDREN"

{¶ 6} After denying in its answer that Marine-Strip caused the death, Day Co. filed a motion for summary judgment, alleging that the company had complied with all requirements of the Federal Hazardous Substances Act ("FHSA"), and urging that therefore Jenkins's state law products liability claims were preempted by federal law. After Jenkins responded to the motion, the trial court granted summary judgment in favor of Day Co., by an entry which read *in toto*:

"Defendant's Motion for Summary Judgment is granted as it appears this action is preempted by the Federal Hazardous Substances Act.

"Judgment for Defendant.

"Costs are to be paid by Plaintiff."

{¶ 7} Jenkins appealed to the Court of Appeals for Franklin County, which reversed the judgment of the trial court and remanded the cause for further proceedings. The court of appeals held that summary judgment was inappropriate because genuine issues of material fact were present concerning whether the warning label on the Marine-Strip container complied with the requirements of the FHSA. The court of appeals further held that even if Day Co. did comply with the requirements of the FHSA, Jenkins's state law products liability claims based on R.C. 2307.76 were not preempted.

**{¶ 8}** The cause is now before this court pursuant to the allowance of a motion to certify the record.

———————————

*Matan & Smith* and *Eugene L. Matan*; and *Amy L. Silvestri*, for appellee.

*James K. Reuss* and *Mary McWilliams Dengler*, for appellant.

*Brian Wolfman*, *Alan B. Morrison*, *Lucinda A. Sikes*, *Patti A. Goldman*, *Arthur Bryant*, *Anne Bloom* and *Harry Lewis*, urging affirmance for *amici curiae*, Public Citizen, Inc. and Trial Lawyers for Public Justice.

*Ray & Todaro Co., L.P.A.*, and *Frank A. Ray*, urging affirmance for *amicus curiae*, Ohio Academy of Trial Lawyers.

———————————

**ALICE ROBIE RESNICK, J**.

**{¶ 9}** This case requires us to resolve whether appellee's products liability action is preempted by the FHSA, Section 1261 *et seq.*, Title 15, U.S.Code.

**{¶ 10}** The trial court, in its regrettably abbreviated entry granting appellant's motion for summary judgment, implicitly found, pursuant to the terms of Civ.R. 56(C), that there was "no genuine issue as to any material fact" and that appellant was "entitled to judgment as a matter of law."  The trial court apparently determined that, even when the evidence is construed most strongly in favor of appellee, the FHSA preempts all of appellee's claims.  We thus review the propriety of the trial court's determination that appellant was entitled to judgment as a matter of law.

**{¶ 11}** In *In re Miamisburg Train Derailment Litigation* (1994), 68 Ohio St.3d 255, 259, 626 N.E.2d 85, 89, this court recognized that, pursuant to Clause 2, Article VI of the United States Constitution (the Supremacy Clause), the United States Congress possesses the power to preempt state law.  "The key question in any preemption analysis is whether Congress intended for state law to be superseded by federal law."  *Id.*, 68 Ohio St.3d at 260, 626 N.E.2d at 89 (citing

4

*Cipollone v. Liggett Group, Inc.* [1992], 505 U.S. __, __, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407, 422). The United States Supreme Court, in the course of several recent decisions, provided guidelines for determining Congressional intent to preempt state law in a particular situation. Initially, a presumption against preemption is the appropriate starting point to begin any preemption inquiry. See *CSX Transp., Inc. v. Easterwood* (1993), 507 U.S. __, __, 113 S.Ct. 1732, 1737, 123 L.Ed.2d 387, 396 ("In the interest of avoiding unintended encroachment on the authority of the States, *** a court interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find pre-emption."). As this court acknowledged in *In re Miamisburg*, 68 Ohio St.3d at 262, 626 N.E.2d at 91, state tort claims can be within the preemptive reach of a federal statute in the appropriate situation, despite the presumption against preemption.

{¶ 12} If a federal statute contains an express preemption clause, matters beyond the reach of the express clause are not preempted. *Cipollone*, 505 U.S. at __, 112 S.Ct. at 2618, 120 L.Ed.2d at 423. Since the FHSA contains a preemption clause, we examine the text of that clause to determine if Congress intended for appellee's claims to be preempted in the context of the FHSA. See *In re Miamisburg*, 68 Ohio St.3d at 260, 626 N.E.2d at 90.

{¶ 13} In *Moss v. Parks Corp.* (C.A.4, 1993), 985 F.2d 736, 739, the court set forth the history behind the FHSA's preemption clause:

"The FHSA was enacted in 1960. The purpose of the law was to 'provide nationally uniform requirements for adequate cautionary labeling of packages of hazardous substances which are sold in interstate commerce and are intended or suitable for household use.' House Comm. On Interstate and Foreign Commerce, Federal Hazardous Substances Labeling Act, H.R.Rep. No. 1861, 86th Cong., 2d Sess. 2 (1960), *reprinted in* 1960 U.S.C.C.A.N. 2833, 2833. As enacted the FHSA did not contain a preemption section. However, when the Act was amended in 1966, the legislative history discussed the impracticality of having the states

produce potentially fifty different labels for a particular hazardous substance. Congress recommended 'a limited preemption amendment which would encourage and permit states to adopt requirements identical with the federal requirements for substances subject to the Federal Act, and to enforce them to complement Federal enforcement ***.' House Comm. On Interstate and Foreign Commerce, Child Protection Act of 1966, H.R.Rep. No. 2166, 89th Cong., 2d Sess. 3 (1966), *reprinted in* 1966 U.S.C.C.A.N., 4095, 4096."

{¶ 14} The FHSA's preemption clause (the "limited preemption amendment" referred to in the above passage), as amended, provides:

"[I]f a hazardous substance or its packaging is subject to a cautionary labeling requirement under section 2(p) or 3(b) [Section 1261(p) or 1262(b), Title 15, U.S.Code] designed to protect against a risk of illness or injury associated with the substance, *no State or political subdivision of a State may establish or continue in effect a cautionary labeling requirement* applicable to such substance or packaging and designed to protect against the same risk of illness or injury *unless such cautionary labeling requirement is identical to the labeling requirement under section 2(p) or 3(b)*."[1] (Emphasis added.) Section 18(b)(1)(A) of the FHSA, as amended by Pub.L. 94-284, Section 17(a), 90 Stat. 503, 510, reprinted in Section 1261 note (Effect upon Federal and State Law), Title 15, U.S.Code.

{¶ 15} We thus follow the directive of this preemption clause, as we determine whether appellee's state law products liability suit attempts to "establish *** a cautionary labeling requirement" which is impermissibly different from that imposed under Section 1261 *et seq.*, Title 15, U.S.Code.

---

1. The FHSA includes a procedure for a state or political subdivision of a state to impose additional labeling requirements not identical to FHSA requirements by obtaining Consumer Product Safety Commission ("CPSC") approval. Section 18(b)(3) of the FHSA as amended, 90 Stat. 510-511, reprinted at Section 1261 note (Effect upon Federal and State Law), Title 15, U.S.Code. That provision is not relevant to this appeal.

**{¶ 16}** The parties do not dispute that methylene chloride is a "hazardous substance" as defined in Section 1261(f), Title 15, U.S.Code. Therefore, the cautionary language appellant placed on the container of Marine-Strip was subject to the labeling requirements of Section 1261(p), Title 15, U.S.Code, which provides in relevant part:

"The term 'misbranded hazardous substance' means a hazardous substance *** intended, or packaged in a form suitable, for use in the household or by children, if the packaging or labeling of such substance is in violation of an applicable regulation issued pursuant to section 1472 or 1473 of this title or if such substance, except as otherwise provided by or pursuant to section 1262 of this title, fails to bear a label--

"(1) which states conspicuously *** (C) the signal word 'DANGER' on substances which are extremely flammable, corrosive, or highly toxic; (D) the signal word 'WARNING' or 'CAUTION' on all other hazardous substances; (E) an affirmative statement of the principal hazard or hazards, such as 'Flammable', 'Combustible', 'Vapor Harmful', 'Causes Burns', 'Absorbed Through Skin', or similar wording descriptive of the hazard; (F) precautionary measures describing the action to be followed or avoided, except when modified by regulation of the Commission pursuant to section 1262 of this title; (G) instruction, when necessary or appropriate, for first-aid treatment; (H) the word 'poison' for any hazardous substance which is defined as 'highly toxic' by subsection (h) of this section ***."

**{¶ 17}** Having established which federal cautionary labeling requirements are applicable to the container of Marine-Strip, we next consider what requirements appellee seeks to impose on appellant.

**{¶ 18}** For purposes of this appeal, we believe all of appellee's claims relating to warning and labeling can be considered as a single claim—a products liability claim for inadequate warning, brought pursuant to R.C. 2307.76(A)(1), which provides that a product "is defective due to inadequate warning or instruction

at the time of marketing if, when it left the control of its manufacturer, both of the following applied:

"(a) The manufacturer knew or, in the exercise of reasonable care, should have known about a risk that is associated with the product and that allegedly caused harm for which the claimant seeks to recover compensatory damages;

"(b) The manufacturer failed to provide the warning or instruction that a manufacturer exercising reasonable care would have provided concerning that risk, in light of the likelihood that the product would cause harm of the type for which the claimant seeks to recover compensatory damages and in light of the likely seriousness of that harm."

{¶ 19} As we read appellee's claims relating to inadequate warning, their essence is that appellant did not provide a warning label which was reasonably adequate under the circumstances to inform a user of the product of the risks involved, and the steps to be taken to avoid those risks. We find that the requirement appellee attempts to impose on appellant can be characterized as "identical to the labeling requirement under section 2(p) [Section 1261(p), Title 15, U.S.Code]," and therefore that appellee's products liability labeling claims are not preempted by the FHSA, Section 1261 note (Effect upon Federal and State Law), Title 15, U.S.Code.

{¶ 20} In *Moss*, *supra*, 985 F.2d at 739, the United States Court of Appeals for the Fourth Circuit stated that "while it is clear that Congress intended to preempt state laws proposing labeling requirements not identical to the FHSA's regulations, the question remains whether that is sufficient to completely preempt state law tort actions for noncompliance with the federally mandated labels." After recognizing that the FHSA provides a limited preemption of state law in the area of labeling, the court determined that a common-law action for failure to warn may be brought

for a manufacturer's noncompliance with FHSA requirements. Id., 985 F.2d at 740-741.[2]

**{¶ 21}** Appellant argues that appellee has conceded that the label on the Marine-Strip container complied with the requirements of the FHSA. In particular, appellant cites the following passage from appellee's memorandum opposing summary judgment filed in the trial court: "Although the manufacturer did comply with the FHSA, as stated by Defendant James B. Day and Company, they knew or should have known that the inhalation of the methylene chloride contained in their product, Dayco Marine Strip [*sic*], could cause death." Appellee urges that no such concession was made, citing the following statement from his reply memorandum filed in the trial court: "It is of vital importance for the Court to note that *nowhere* in any of Plaintiff's documents filed relevant to the Defendant's Motion for Summary Judgment does the Plaintiff admit that the warning label on the Dayco Marine-Strip container complied with relevant provisions of the Federal Hazardous

---

2. To the extent that appellee attempts to impose a responsibility on appellant to label Marine-Strip in a more elaborate or different manner than that imposed by the FHSA, we must agree with the *Moss* court that appellee's claim is preempted. Were we writing on a clean slate in interpreting the FHSA, we would be reluctant to reach this conclusion. However, we find our result directed by the clear statement in *Cipollone*, *supra*, 505 U.S. at __, 112 S.Ct. at 2620, 120 L.Ed.2d at 426, that "[t]he phrase '[n]o requirement or prohibition' sweeps broadly and suggests no distinction between positive enactments and common law." Similarly Congress's preemption of any state "labeling requirement" not identical to the FHSA requirement sweeps broadly enough to preempt state statutory tort law as well as regulatory law. See, also, *Easterwood*, *supra*, 507 U.S. at __, 113 S.Ct. at 1737, 123 L.Ed.2d at 396-397 (a plaintiff's state common-law claim may be within the reach of a federal law that preempts any "law, rule, regulation, or order, or standard relating to railroad safety").

In light of decisions such as *Moss*, *Worm v. Am. Cyanamid Co.* (C.A.4, 1993), 5 F.3d 744, 747-748 (Federal Insecticide, Fungicide, and Rodenticide Act ["FIFRA"], Section 136 *et seq.*, Title 7, U.S.Code, with a preemption provision [Section 136v, Title 7, U.S.Code] similar to that of the FHSA, preempts state law claims of inadequate labeling which are different from requirements established by FIFRA), and *Papas v. Upjohn Co.* (C.A.11, 1993), 985 F.2d 516, 518 ("To the extent that state law actions for damages depend upon a showing that a pesticide manufacturer's 'labeling or packaging' failed to meet a standard 'in addition to or different from' FIFRA requirements, section 136v pre-empts the claims."), we are compelled to find that appellee may not recover on the basis of violation of a labeling duty that is not identical to the requirement of Section 1261(p), Title 15, U.S.Code.

The court of appeals held that appellee's claims based on labeling were not preempted even if appellant complied with the FHSA. This was error.

Substances Act ('FHSA'). In fact, Plaintiffs [sic] merely point out, as they did in their Memorandum Contra Defendant's Motion for Summary Judgment, that '*** a genuine issue of material fact regarding adequacy of warnings (exists) *even if* Defendant *did* comply with FHSA provisions.'" (Emphasis *sic*.)

{¶ 22} Our review of the record convinces us that appellee has never conceded that appellant complied with FHSA requirements. Appellant takes one sentence from a memorandum appellee filed in the trial court, and ignores the context in which that statement was made. The thrust of appellee's argument to the trial court in this portion of his memorandum was that appellant had failed to provide an adequate warning under the circumstances. Appellant gives appellee's reference to compliance with the FHSA a significance that reference does not have.

{¶ 23} Section 1261(p), Title 15, U.S.Code does not specify all the language required on a product's warning label. See *Chem. Specialties Mfrs. Assn. v. Allenby* (C.A.9, 1992), 958 F.2d 941, 950. A manufacturer of a product formulates its own warning language, guided by the FHSA, but the language is not reviewed for adequacy by a federal agency.[3] In particular, Section 1261(p)(1)(E), Title 15, U.S.Code requires a label on a hazardous substance to contain "an affirmative statement of the principal hazard or hazards" and Section 1261(p)(1)(F) requires a label to state "precautionary measures describing the action to be followed or avoided." Given that a manufacturer selects its own language to convey this information, to comply with the FHSA a manufacturer must supply a label which provides a reasonably adequate warning to inform a user of the risks involved, and the action to take to avoid those risks. Because this is essentially the

---

3. The Consumer Product Safety Commission is the administrative agency responsible for FHSA oversight. Section 2079, Title 15, U.S.Code. Section 1262(b), Title 15, U.S.Code gives the commission authority to promulgate additional label requirements, and Section 1262(c), Title 15, U.S.Code allows it to exempt substances from compliance with terms of the FHSA in certain situations. However, there is no provision in the FHSA for label approval by the commission.

same requirement appellee attempts to impose on appellant pursuant to R.C. 2307.76(A)(1), it is "identical to the labeling requirement under section 2(p) [Section 1261(p), Title 15, U.S.Code]" for purposes of the FHSA's preemption clause, Section 1261 note (Effect upon Federal and State Law), Title 15, U.S.Code, and appellee's claim is not preempted.[4] We thus agree with the court of appeals that the trial court erred in granting summary judgment in favor of appellant on the basis of preemption.

{¶ 24} Although a claim based on a state law standard identical to the labeling requirement of the FHSA is not preempted, summary judgment would still be proper if evidence showed that the label did comply with the FHSA. However, appellee, primarily through the deposition of his expert, Wayne J. Genck, raised issues regarding several potential problems with the label on the Marine-Strip container. For example, Genck opined that the label gives the misleading impression that only persons with heart disease should be concerned about the possible effects of prolonged breathing of the methylene chloride vapors in poorly ventilated areas. Genck also stated his beliefs that the label inadequately defines

---

4. Our analysis could be different if we were considering whether a plaintiff's inadequate labeling claim is preempted by FIFRA, rather than by the FHSA. In Worm, supra, 5 F.3d at 747, the court explained the "involved process of review" by the Environmental Protection Agency ("EPA") before approval of a label on a product covered by FIFRA. FIFRA requires a manufacturer to submit draft label language to the EPA. Id. A final label must be submitted prior to registration. Id. It is a violation of FIFRA to alter, even partially, any required labeling. Id. The court concluded that "[g]iven the comprehensive nature of the FIFRA labeling process, it is apparent that { 136v(b), prohibiting any state requirement in addition to or different from the federal requirements, dictates the preemption of any state common law cause of action that rests on an alleged failure to warn or communicate information about a product through its labeling." Id. See, also, Papas, supra, 985 F.2d at 519 ("If a pesticide manufacturer places EPA-approved warnings on the label and packaging of its product, its duty to warn is satisfied, and the adequate warning issue ends."). Because the FHSA requires no federal agency approval of the precise language which appears on the label of a substance covered by the FHSA, it appears that an inadequate warning claim is more readily preempted for a product covered by FIFRA than would a similar inadequate warning claim be for a product covered by the FHSA. Of course, since this case does not involve FIFRA, we do not resolve this question. We discuss FIFRA merely to explain why cases interpreting that statute may be of limited relevance to the issue in this case.

"prolonged exposure" and also does not adequately explain what steps must be taken to achieve "adequate ventilation." Genck further believed that the product should be used outdoors if possible, and that the label should clearly state that outdoor use is the preferred use. This evidence raises issues of fact as to whether the label complied with the FHSA, precluding summary judgment.

{¶ 25} As a final consideration, we observe that appellee, in the complaint, brought other claims in addition to those relating to inadequate warning and labeling, such as claims of defective design and breach of warranty. Appellee now argues that these claims are not preempted. However, appellee did not appeal their dismissal to the court of appeals, and they are therefore not before us.

{¶ 26} In summary, our analysis of the FHSA leads us to conclude that the FHSA provides a limited preemption of state law in the area of labeling of hazardous substances. We hold that a products liability action for inadequate labeling of a hazardous substance covered by the FHSA brought pursuant to state law that imposes labeling requirements identical to the requirements of the FHSA is not preempted. We find that an issue exists as to whether the label complied with the FHSA, so that the trial court erred in granting appellant's motion for summary judgment. We affirm the judgment of the court of appeals insofar as it restored appellee's claims based on R.C. 2307.76 that seek to enforce labeling standards identical to those in the FHSA. We reverse the court of appeals insofar as it held that appellee had other claims based on labeling that were not preempted. We remand this cause to the trial court for further proceedings.

*Judgment affirmed in part,*
*reversed in part and*
*cause remanded.*

MOYER, C.J., A.W. SWEENEY, DOUGLAS, WRIGHT, F.E. SWEENEY AND PFEIFER, JJ., concur.

_____