NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0279n.06

No. 10-6133

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF KENTUCKY |
| ANTHONY LAMAR, | ) | |
| | ) | **O P I N I O N** |
| **Defendant-Appellant.** | ) | |
| _____ | ) | |

Before: MOORE, SUTTON, and DONALD, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Defendant-Appellant Anthony Lamar appeals

his jury conviction for distribution and possession of five hundred grams or more of cocaine. Lamar

seeks a new trial on the basis of three purported errors: (1) the district court's refusal to make a

preliminary determination regarding the admissibility of coconspirator statements used at trial; (2)

the district court's alleged failure to evaluate appropriately the admissibility of Federal Rule of

Evidence 404(b) materials; and (3) the district court's failure to strike the government's improper

vouching and bolstering of its witnesses' credibility. After consideration of the errors that Lamar

claims, we **AFFIRM** his conviction and the judgment of the district court.

**I. BACKGROUND & PROCEDURE**

On November 19, 2009, Lamar was indicted for conspiring to distribute and to possess with

the intent to distribute five hundred or more grams of cocaine, in violation of 21 U.S.C. §§ 841(a)(1),

846.  The alleged conspiracy revolved around a man named Fred Lewis, who came to the attention of the FBI's Safe Streets Task Force in 2006.  Lewis sold cocaine and other drugs to users and lower-level traffickers in the Cincinnati, Ohio and Northern Kentucky areas.

Beginning in October 2007 and extending through mid-June 2008, the FBI obtained a series of court orders authorizing the interception of phone calls to and from Lewis's phone.  During that period, Lamar, who also went by the alias "Rock," was one of Lewis's drug suppliers.  Although most of the interactions between Lewis and Lamar involved sales of  "cush," which is a form of high-end marijuana, the government produced testimony indicating the existence of three occasions on which Lamar sold Lewis kilogram quantities of cocaine.  The vast majority of the evidence against Lamar pertained to only one of these drug buys, which was completed on May 7, 2008.  With respect to that particular purchase, officers initially intercepted a call during which Lamar stated that he could supply Lewis with cocaine the following day at a price of $23,000 or $23,500 per kilogram.  That intercepted call between Lewis and Lamar followed a series of calls between Lewis and other coconspirators in which Lewis sought to obtain kilogram quantities of cocaine from other individuals but was unsuccessful in doing so.  The call also came after officers conducting surveillance on Lewis observed Lewis entering the Beekman Variety Mart where Lamar worked.  At trial, Lewis testified that he had visited Lamar to obtain some marijuana and that over the course of their interaction, Lewis relayed to Lamar his previous efforts to obtain cocaine.  Later that day in a separate intercepted call, Lewis and Lamar arranged to pay for the cocaine at Lewis's home, which was under surveillance at the time.  After Lamar arrived and while Lamar was still inside, Lewis made another

2

intercepted call to inform a buyer that he was with the source and that they had multiple kilograms

of cocaine available for $24,500 each. Lewis expressed a similar offer to another buyer in a separate

intercepted call shortly thereafter. After another series of intercepted calls, including a few more

between Lewis and Lamar, Lamar delivered the cocaine to Lewis later that day. Lewis and Lamar

began discussing the purchase of a second kilogram of cocaine a few hours later, but that purchase

was never completed.

After three days of testimony and the replaying of dozens of taped phone calls, the jury

returned a guilty verdict against Lamar. The district court then sentenced Lamar to 156 months in

prison and eight years of supervised release. This appeal followed.

## II. ANALYSIS

### A. The Coconspirator Testimony

Lamar first argues that the district court's decision to admit coconspirator statements without

making a preliminary determination as to their admissibility warrants a new trial. Federal Rule of

Evidence 801(d)(2)(E) excludes from the hearsay rule statements that are "made by the party's

coconspirator during and in furtherance of the conspiracy." Before such statements may be admitted,

however, the government must establish "three foundational prerequisites": "that a conspiracy

existed; that [the] defendant was a member of the conspiracy; and that the declarant's statement was

made during the course and in furtherance of the conspiracy." *United States v. Conrad*, 507 F.3d

424, 429 (6th Cir. 2007) (alteration in original) (quoting *United States v. Maliszewski*, 161 F.3d 992,

1007 (6th Cir. 1998)). These prerequisites must be established by a preponderance of the evidence based on the district court's findings of fact. *Id.* (citing Fed. R. Evid. 104(a)).

Prior to trial, Lamar's defense counsel filed a motion for a pretrial hearing pursuant to *United States v. Enright*, 579 F.2d 980 (6th Cir. 1978), to determine the admissibility of any coconspirators' statements that the government would seek to admit under the coconspirator exception to the hearsay rule.[1] The government then filed a bill of particulars detailing its intent to rely on testimony of coconspirators and the facts it sought to prove at trial, including the scope of the conspiracy, Lamar's role as a drug supplier, and the details surrounding a particular sale of cocaine that was negotiated with Lamar on May 6, 2008 and executed the following day. After reviewing the government's proffered evidence, the district court determined that a pretrial hearing was unnecessary and denied Lamar's request, deciding instead to admit the coconspirators' hearsay statements conditionally subject to the government's eventual demonstration of their admissibility. The district court stated that it was "satisfied, assuming the Government is able to admit evidence consistent with its Bill of Particulars, that there will be sufficient evidence of a conspiracy to distribute powder and/or crack cocaine which includes both Defendant Lamar and the declarants, and that those statements were made during and in furtherance of the alleged conspiracy." R. 51 (Dist. Ct. Order at 4).

Lamar's challenge to the adequacy of the district court's factual determination on the admissibility of the coconspirator statements is refuted by the record. Instead, as the trial record

---

[1]Although Lamar's original attorney was removed due to a conflict of interest while the motion was pending, his newly retained counsel filed a motion seeking to move forward with the original request for a pretrial hearing.

clearly demonstrates, the district court *did* make the requisite finding. Toward the end of the first day of trial and before the government began playing the recorded telephone calls for the jury, the district judge stated for the record his determination that the government had produced sufficient non-hearsay testimony to establish by a preponderance of the evidence that a conspiracy existed involving Lewis and Lamar, that any statements in 2008 were made during the conspiracy, and that statements setting up cocaine purchases or deliveries were in furtherance of the conspiracy. After reviewing the record, we do not find those determinations to be erroneous. *Cf. United States v. Gonzalez*, 501 F.3d 630, 636–37 (6th Cir. 2007) (affirming a district court's general finding that statements fell within the coconspirator exception to the hearsay rule where the government had presented a substantial amount of non-hearsay testimony about the interactions between members of an alleged drug conspiracy).

To the extent that Lamar's claim challenges the district court's refusal to grant a pretrial hearing, it is without merit. Our cases make clear that the district court has considerable discretion in determining how best to handle evidentiary issues. *See, e.g.*, *United States v. Vinson*, 606 F.2d 149, 152 (6th Cir. 1979) ("A trial judge must have considerable discretion in controlling the mode and order of proof at trial . . . ."), *cert. denied*, 444 U.S. 1074 (1980). Although a "mini hearing" to determine whether the government may use coconspirator statements is one method of ensuring conformance with the coconspirator exception to the hearsay rule, it is by no means the only one. *See id.* A district court is also at liberty to "admit the hearsay statements subject to later demonstration of their admissibility by a preponderance of the evidence," *id.* at 153, which is exactly

what the district court did here. There was no error on this ground. Because Lamar has not raised any specific objections to the sufficiency of the evidence on any one of the three foundational factors described above, no further analysis is needed. We conclude that a retrial is not warranted on the basis of the district court's admission of the coconspirator statements.

**B. Rule 404(b)**

Before trial, the government provided notice to Lamar of its intent to introduce evidence that, in addition to the cocaine transactions at issue, Lamar had sold small quantities of marijuana to individual coconspirators. The notice explained that the government planned to introduce the evidence to show how the witnesses knew Lamar and because the marijuana sales were "inextricably intertwined" with the charged offenses and therefore "necessary to explain the circumstances of the charged conduct." R. 53 (Notice of Intent to Offer Evidence at 2). In response, Lamar filed a motion in limine to exclude the evidence, opposing any reference by the government to Lamar's marijuana sales.

At trial, the district court denied the motion in limine and overruled Lamar's Rule 404(b) objection. In his oral ruling, the district court concluded that the evidence was "not character evidence as defined under 404(b)." R. 93 (Day 1 Trial Tr. at 3). According to the district court, the evidence both explained why the coconspirators knew Lamar and gave an explanation for a reference to "cush" in one of the taped phone calls in which Lewis referred to Lamar in a discussion with another of the alleged coconspirators. Furthermore, the district court found that the close temporal connection to the cocaine transaction also made the evidence admissible as "background evidence

and necessary to complete the story of the charged offense." *Id.* On appeal, Lamar maintains that the district court admitted the evidence of the marijuana sales without engaging in a proper Rule 404(b) analysis, which he contends warrants remand for a new trial.

Federal Rule of Evidence 404(b) requires the exclusion of other-acts evidence used for no purpose other than to suggest a party's action in conformity with such prior acts. *United States v. Trujillo*, 376 F.3d 593, 605 (6th Cir. 2004). We have held time and again, however, that background evidence, "often referred to as '*res gestae*,' does not implicate Rule 404(b)." *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000). The exception for background evidence is narrow and is not intended to permit easy evasion of the constraints of Rule 404(b). *United States v. Clay*, ---F.3d----, 2012 WL 43592, at *7 (6th Cir. 2012). As a general matter, evidence falling within the exception is limited to that which "has a causal, temporal or spatial connection with the charged offense," such as evidence that "is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of the witness's testimony, or completes the story of the charged offense." *Hardy*, 228 F.3d at 748. We review the district court's decision to admit evidence pursuant to the background-evidence exception for an abuse of discretion. *See Clay*, 2012 WL 43592, at *3, *7–8.

The handful of references to Lamar's marijuana sales in this case are closely tied to the explanation as to how Lamar knew the coconspirators and how he became involved in the cocaine conspiracy. For instance, during Lewis's testimony, Lewis explained that the inception of the May 7th cocaine sale began as he was purchasing marijuana from Lamar. In a recorded call with another

coconspirator shortly after that interaction, Lewis explained that he had found a source of cocaine

through "Rock from the store, with the cush." R. 98 (Day 2 Trial Tr. at 40). The marijuana sales

came up again when Gerraill Miller, who was on the receiving end of the call from Lewis that

identified Lamar as the source of cocaine, testified about that telephone interaction with Lewis. R.

104 (Day 3 Trial Tr. at 27). Miller also testified that the voice in the earlier call was Lamar's and

confirmed that the coded language involved cocaine. *Id.* As groundwork for those conclusions, the

government elicited testimony that Miller, himself, purchased marijuana from Lamar so as to

demonstrate the existence of prior interactions between the two. *Id.* at 24. Finally, to establish that

Lewis's phone calls with Lamar related to cocaine rather than marijuana, the government used

testimony about the nature of the marijuana sales to establish that those sales were much less

involved and required no coordination to accomplish.

We agree with the district court that these references to Lamar's marijuana sales were

admissible as background evidence to show how Lamar became involved in the conspiracy and how

he was associated with various coconspirators. *Cf. United States v. Paulino*, 935 F.2d 739, 755 (6th

Cir.) (concluding that the district court did not abuse its discretion by admitting the defendant's prior

drug deals to show "the background and development of a conspiracy" (internal quotation marks

omitted)), *cert. denied*, 502 U.S. 914 (1991); *United States v. Galindo*, 95 F. App'x 160, 163 (6th

Cir.) (determining that evidence of prior small drug transactions was permissible to show the

connection between the defendant and another coconspirator), *cert. denied*, 543 U.S. 889 (2004).

Lamar's marijuana sales also had the requisite temporal connection and helped to explain the

inception of the offense. Accordingly, the district judge did not abuse his discretion in admitting them. Lamar's argument that the district judge failed to apply the correct Rule 404(b) analysis prior to admitting this evidence is therefore without merit.

## C. Prosecutorial Misconduct

In his final argument, Lamar contends that the district court erroneously permitted testimony that was elicited by the government from multiple coconspirator witnesses concerning a requirement under each of their plea agreements to provide truthful testimony in order to avoid either losing their sentence reductions or facing charges of perjury. Lamar further argues that the government's closing argument improperly vouched for the truthfulness of the witnesses' testimony and that the government improperly bolstered that testimony by indicating that the government "had some secret method by which to determine whether coconspirators were telling the truth." Appellant Br. at 29.

"Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the office of the United States Attorney behind that witness." *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999). Bolstering, on the other hand, "occurs when the prosecutor implies that the witness's testimony is corroborated by evidence known to the government but not known to the jury." *Id.* at 551. We evaluate this type of prosecutorial misconduct using a two-part test that looks first to whether the remarks were improper and second to whether the impropriety resulted in reversible error. *United States v. Jackson*, 473 F.3d 660, 670 (6th Cir.), *cert. denied*, 550 U.S. 952 (2007). In evaluating the second prong, we must determine whether the prosecutor's misconduct was flagrant,

which we do by assessing four factors: "(1) whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether [the remarks] were isolated or extensive; (3) whether [the remarks] were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused." *United States v. Carroll*, 26 F.3d 1380, 1385 (6th Cir. 1994).

Because Lamar's counsel did not object to the remarks that Lamar now challenges on appeal, we review his claim for improper vouching and bolstering only for plain error. *United States v. Henry*, 545 F.3d 367, 376 (6th Cir. 2008). Particularly in the context of plain-error review, "[i]nappropriate but isolated prosecutorial comments do not warrant a new trial." *United States v. Wells*, 623 F.3d 332, 338 (6th Cir. 2010), *cert. denied*, 131 S. Ct. 1534 (2011).

Lamar points first to the government's direct examination of numerous cooperating witnesses during which the government elicited testimony about the witnesses' plea agreements and the corresponding obligation of each witness to provide truthful testimony. Those exchanges generally also included a recognition by each witness that he or she would not receive any sentence reduction if the testimony was false and that he or she would face perjury charges for such testimony. *See* R. 93 (Day 1 Trial Tr. at 92–92); R. 98 (Day 2 Trial Tr. at 207–08); R. 98 (Day 2 Trial Tr. at 221); R.98 (Day 2 Trial Tr. at 233–34); R. 104 (Day 3 Trial Tr. at 28–29); R. 104 (Day 3 Trial Tr. at 38–39); R. 104 (Day 3 Trial Tr. at 54); R. 104 (Day 3 Trial Tr. at 65). In no exchange did the prosecutor make any statement suggesting that he would be responsible for filing a § 5K.1 motion or for evaluating the truthfulness of the testimony. *Cf. Wells*, 623 F.3d at 342 ("[A] prosecutor may

properly point out that a witness's consideration for a plea bargain is telling the truth, but he may not state (or even strongly imply) that it is he who shall be the arbiter of truth . . . .").

We have held repeatedly that it is acceptable for prosecutors to elicit testimony about a cooperating witness's plea agreement and about the consequences that witness could face for providing false testimony. *United States v. Reid*, 625 F.3d 977, 982 (6th Cir. 2010). Indeed, one such case involved circumstances quite similar to those at issue here. There,

> each of the cooperating witnesses testified in very similar terms that he had agreed as part of his plea to testify truthfully if called as a witness; that his truthful testimony could result in the filing of a motion for reduction of sentence; that the determination of whether to reduce his sentence would be made by the judge; and that he would lose the chance for a reduction in sentence and would face additional perjury charges if he testified falsely.

*Id.* We thus cannot conclude that the government acted improperly by eliciting such testimony in this case.

A few of the statements in the government's closing argument present a somewhat closer question. In particular, when reiterating the witnesses' obligations under their plea agreements to provide truthful testimony, the prosecutor at one point in closing argument stated that "[t]he evidence was all these people were given one simple rule. Tell *me* the truth. Just tell the truth. That's all that's required of them, and *they've done it.*" R. 104 (Day 3 Trial Tr. at 147) (emphasis added). That statement comes perilously close to imparting the prosecutor's imprimatur of truth on the testimony of the cooperating witnesses. In addition, a short while later, the prosecutor also told the jury to "[t]hink about how [the witnesses] testified. They were all very careful to try and avoid exaggerating things or saying things that go beyond what was strictly true. All of them were careful." *Id.* at 149.

11

Although the remarks that followed explained the prosecutor's characterization of the witness testimony as "careful" and avoiding exaggeration by providing concrete examples of witness statements and demeanor, the prosecutor's remarks are still quite troubling.[2]

Nonetheless, even if we assume that these statements were improper, they were relatively isolated and appear to have been non-deliberate. Given the strength of the evidence implicating Lamar in the cocaine sales, including coconspirator testimony, police surveillance corroborating certain in-person interactions between Lamar and Lewis, and taped telephone conversations, the prosecutor's statements were not so flagrant as to warrant a new trial. *Cf. Wells*, 623 F.3d at 344; *Jackson*, 473 F.3d at 672. The district court therefore did not plainly err in failing to strike them.

### III.  CONCLUSION

Because Lamar has not demonstrated that the district court committed any evidentiary error or that it committed plain error by permitting improper vouching or bolstering of the government witnesses' credibility, we **AFFIRM** Lamar's conviction and the judgment of the district court.

---

[2]In contrast, we also note that a few of the closing statements to which Lamar objects in his brief have been removed from their contextual foundation. When placed in context, the statements are much less suspect. For example, Lamar points to the prosecutor's statement that "[w]e're going to look at other pieces of information to verify what [the witnesses] say" as evidence of improper bolstering. Appellant Br. at 27 (quoting R. 104 (Day 3 Trial Tr. at 148)). In context, however, the statement follows the prosecutor's discussion of the risks of lying in light of the existence of taped phone calls. Although the phrasing leaves something to be desired, it does not improperly insinuate that outside evidence exists that would confirm or dispel the witnesses' statements. *Cf. Jackson*, 473 F.3d at 670–72 (noting the requirement that a prosecutor's comments be viewed in their full context when evaluating them for impropriety).