KAGY et al., Appellants and Cross–Appellees,

v.

TOLEDO—LUCAS COUNTY PORT AUTHORITY et al., Appellees
and Cross–Appellants; Burlington Air Express, Appellee.

[Cite as *Kagy v. Toledo—Lucas Cty. Port Auth.* (1998), 126 Ohio App.3d 675.]

Court of Appeals of Ohio,
Sixth District, Fulton County.

No. 97–FU–9.

Decided March 20, 1998.

676

*David W. Zoll, Michelle L. Kranz* and *Brian T. Schurter,* for appellants and cross-appellees.

*James D. Ossyra* and *Teresa L. Grigsby,* for appellee and cross-appellant.

*William H. Heywood III* and *David J. Coyle,* for appellee.

---

HADLEY, Judge.

Plaintiffs-appellants/cross–appellees, Joseph Kagy and Winifred Kagy (now deceased) and numerous other property owners in Fulton County, Ohio appeal the decision of the Fulton County Common Pleas Court granting summary judgment to defendant-appellee, Burlington Air Express, Inc. ("Burlington"). In a consolidated action, defendant-appellee/cross–appellant, Toledo—Lucas County Port Authority appeals the judgment of the Fulton County Common Pleas Court denying summary judgment to the port authority.[1] For the following reasons, we affirm the trial court's decision.

In the early 1990s, the port authority decided to expand the Toledo Express Airport in an attempt to revitalize Toledo's stagnant economy. As part of that expansion effort, the port authority leased the use of the airport to Burlington.

Since its arrival, Burlington has operated an overnight air express operation at the Toledo Express Airport. Throughout the business day, Burlington picks up and drops off packages at various locations throughout the nation. Then, at night, planes arrive at the Toledo Express Airport to drop off packages obtained throughout the day. The packages are then sorted and reloaded onto planes that deliver the packages the following day. In the early morning hours, the planes leave the airport for the return flights.

Although the airport itself is situated in Lucas County, Ohio, the flight paths of the Burlington planes go over Fulton County.[2] Appellants allege that the resulting noise, particularly from Burlington's overnight flights, is a nuisance.[3]

---

1. Ordinarily, the denial of a motion for summary judgment is not a final, appealable order. *State ex. rel. Overmeyer v. Walinski* (1966), 8 Ohio St.2d 23, 37 O.O.2d 358, 222 N.E.2d 312. However, pursuant to R.C. 2501.02, amended effective January 27, 1997, an appellate court has jurisdiction upon appeal from "an order denying a political subdivision * * * the benefit of an alleged immunity from liability as provided in Chapter 2744." See, also, R.C. 2744.02(C). The trial court in the present action denied the port authority summary judgment on the allegation of governmental immunity.

2. Fulton County is located to the west of the Toledo Express Airport.

3. Appellants are Fulton County property owners who live under the flight path or near the end of the airport runways.

Therefore, on June 4, 1993, a group of fourteen property owners filed suit in the Fulton County Common Pleas Court alleging that Burlington, the port authority, and the city of Toledo were responsible for causing a private nuisance, for inverse condemnation, and for denying the claimants equal protection of the law. Upon motion of the port authority, the United States District Court for the Northern District of Ohio removed the action to federal court.

While this action was pending in federal court, five additional actions by similarly situated property owners[4] were either filed in, or remanded to, the Fulton County Common Pleas Court.

Approximately two years later, in September 1995, the plaintiffs in the federal action filed an amended complaint in federal court. Although the action retained causes for nuisance and inverse condemnation, plaintiffs no longer had a federal claim. Therefore, the action was remanded to the Fulton County Common Pleas Court. In January 1996, the property owners identified in the Kagy complaint were consolidated with the five other companion cases pending before the Fulton County Common Pleas Court.

As a result of various motions to dismiss filed by the defendants, the trial court was able to pare down the complaints into a uniform action. The trial court, on February 6, 1996, dismissed every cause of action pending against the defendants except for the actions sounding in nuisance and inverse condemnation.

In May 1996, the property owners, represented by attorney David Zoll, filed a second amended complaint.[5] That action abandoned the claim for inverse condemnation. The complaint now alleged that Burlington, the Pittston Company,[6] and the port authority had caused a nuisance and therefore violated R.C. 4582.07.[7]

---

**4.** The record for this appeal does not contain the complaints for any of these actions. We were able to deduce from later pleadings and motions that each of these five companion cases also contained numerous property owner claimants, and similar causes of action. The actions were entitled *Biler, et al. v. Burlington Air Express, Inc., et al.,* case No. 94–CV–195; *Calabrese et al. v. Burlington Air Express, Inc., et al.,* case No. 94–CV–189; *Miller et al. v. Burlington Air Express, Inc., et al.,* case No. 94–CV–194; *Howard et al. v. Burlington Air Express, Inc., et al.,* case No. 94–CV–161; and *McQuade et al. v. Burlington Air Express, Inc., et al.,* case No. 94–CV–122.

**5.** Since we do not have the complaints for the actions consolidated with Kagy, we are unable to determine exactly how many of the plaintiffs Zoll represented at the time. It appears that three of the consolidated groups of plaintiffs were represented by Zoll at the time.

**6.** The Pittston Company was later dismissed from the action.

**7.** R.C. 4582.07 requires the port authority to prepare plans for future development, construction, and improvement of the port, and to provide notice to affected landowners and hold hearings for objections.

In July 1996, a seventh group of plaintiff property owners filed suit against Burlington and the port authority. The trial court subsequently consolidated that action with the existing action.[8]

Beginning in October 1996, the parties began filing their motions for summary judgment.[9] The trial court denied appellants' motions for summary judgment. However, the trial court granted Burlington's motion for summary judgment on the basis that federal law preempted the state law causes of action against Burlington. The trial court denied the port authority's motion for summary judgment on the basis of governmental immunity.

As a result of the trial court's decisions regarding the various summary judgment motions, both the appellants and the port authority appealed.[10] The property owners assert one assignment error in their action against Burlington. The port authority also asserts one assignment of error in its cross-appeal before this court.

In the interest of orderliness, we will first address appellants' assignment of error. Then, we will address the port authority's cross-assignment of error.

### Assignment of Error

"The trial court erred in granting Burlington Air Express, Inc.'s motion for summary judgment because the Airline Deregulation Act of 1978 does not preempt the plaintiffs' nuisance claims."

Summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. Civ.R. 56(C); *State ex rel. Howard v. Ferreri* (1994), 70 Ohio St.3d 587, 589, 639 N.E.2d 1189, 1192–1193; *State ex rel. Parsons* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379–1380; *Turner v. Turner* (1993), 67 Ohio St.3d 337, 339–340, 617 N.E.2d 1123, 1125–1126.

When reviewing a summary judgment, we must independently review the record to determine if summary judgment was appropriate. *Morehead v. Conley*

---

**8.** Again, the record does not contain a copy of the complaint. Therefore, we are unable to determine who the parties are or what causes of action exist. However, based upon the various motions and judgment entries, it appears that numerous property owners are involved alleging similar causes against the same defendants.

**9.** The record appears to reflect that by this time, the only remaining defendants were Burlington and the port authority.

**10.** For purposes of judicial economy, the court *sua sponte* ordered the appeals consolidated under the number F–97–006.

(1991), 75 Ohio App.3d 409, 411–412, 599 N.E.2d 786, 787–788. Moreover, our function is limited to determining whether sufficient evidence was presented to make an issue of fact a proper jury question. *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212. Therefore, we will not weigh the evidence or determine the truth of the matter in reviewing a summary judgment. *Id.*

The party seeking summary judgment bears the initial burden of showing that no genuine issue of material fact exists for trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 330, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265, 278; *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 296, 662 N.E.2d 264, 275–276; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801–802. However, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings." *Chaney v. Clark Cty. Agricultural Soc.* (1993), 90 Ohio App.3d 421, 424, 629 N.E.2d 513, 515. Instead, once the initial burden has been met, the nonmoving party has a reciprocal burden to set forth specific facts showing that there is a genuine issue for trial. *Id.; Dresher, supra,* at 293, 662 N.E.2d at 273–274. Otherwise, the trial court must enter summary judgment, if appropriate, against the nonmoving party. *Id.*

Appellants contend that the trial court erred in finding that the Airline Deregulation Act of 1978 ("ADA") preempted their tort claims against Burlington. Therefore, they maintain that the trial court should not have granted Burlington's summary judgment motion.

We begin our analysis by reviewing the history of the ADA. The ADA forbids any state to "enact or enforce a law, regulation or other provision having the force and effect of law related to a price, route, or service of an air carrier" Section 41713(b)(1), Title 49, U.S. Code.[11] Additionally, that act contains a saving clause, which says: "Nothing * * * in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." Former Section 1506, Title 49 Appendix, U.S. Code. Therefore, we must determine whether Burlington Airline's activities relate to a "price, route or service of an air carrier."

The United States Supreme Court has defined "relating to" as "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with." *Morales v. Trans World Airlines, Inc.* (1992), 504 U.S. 374, 383, 112 S.Ct. 2031, 2037, 119 L.Ed.2d 157, 167, citing

---

11. The original preemption clause stated that "no State * * * shall enact or enforce any law, rule, regulation, standard or other provision having the force and effect of law relating to rates, routes, or services of any air carrier" Former Section 1305(a)(1), Title 49 Appendix, U.S. Code. Congress subsequently reworded the section to the version found in Section 41713(b)(1), Title 49, U.S. Code.

Black's Law Dictionary (5 Ed. 1979) 1158. Therefore, the court concluded that "[s]tate enforcement actions having a connection with, or reference to, airline 'rates, routes, or services' are preempted under 49 U.S.C. App § 1305(a)(1)."[12] *Id.* at 384, 112 S.Ct. at 2037, 119 L.Ed.2d at 167–168; *Am. Airlines, Inc. v. Wolens* (1995), 513 U.S. 219, 232, 115 S.Ct. 817, 826, 130 L.Ed.2d 715, 728 ("[t]he ADA's preemption clause, § 1305(a)(1), read together with the FAA's saving clause, stops States from imposing their own substantive standards with respect to rates, routes, or services").

Appellants in the present case filed a common-law nuisance action against Burlington. In their complaints, appellants specifically claimed that the noise and nighttime hours of Burlington's operations created a nuisance that substantially interfered with the enjoyment of their property.

■ We have reviewed the record and agree with the trial court's conclusion that the acts appellants are complaining of, specifically noise, flight path, and hours of operation, relate to the routes and services of Burlington. Therefore, in accordance with the United States Supreme Court and the ADA, appellants' common-law action of nuisance against Burlington is preempted.

■ Appellants are correct in their argument that there is a presumption against federal preemption unless that was the "clear and manifest purpose of Congress." *California v. ARC Am. Corp.* (1989), 490 U.S. 93, 101, 109 S.Ct. 1661, 1665, 104 L.Ed.2d 86, 94, citing *Rice v. Santa Fe Elevator Corp.* (1947), 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447, 1459. To uphold preemption, we must find that Congress intended for federal law to supersede state law. See *Cipollone v. Liggett Group, Inc.* (1992), 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407, 422; *In Re Miamisburg Train Derailment Litigation* (1994), 68 Ohio St.3d 255, 260, 626 N.E.2d 85, 89–90.

The Supremacy Clause of the United States Constitution provides that "the Laws of the United States * * * shall be the supreme Law of the Land * * *, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." Clause 2, Article VI, United States Constitution. Therefore, under the Supremacy Clause, Congress has the power to preempt state law. *Minton v. Honda of Am. Mfg., Inc.* (1997), 80 Ohio St.3d 62, 68, 684 N.E.2d 648, 653–654, citing *Jenkins v. James B. Day Co.* (1994), 69 Ohio St.3d 541, 544, 634 N.E.2d 998, 1001.

■ Furthermore, there are three ways that state law may be preempted under the Supremacy Clause. First, Congress may make its intent known through explicit statutory language. *Id.* Second, " 'in the absence of explicit

---

**12.** Now codified as Section 41713(b)(1), Title 49, U.S.Code.

statutory language, state law is pre-empted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively.' " *Id.* at 69, 684 N.E.2d at 653, quoting *English v. Gen. Elec. Co.* (1990), 496 U.S. 72, 78–79, 110 S.Ct. 2270, 2274–2275, 110 L.Ed.2d 65, 73–74. " 'Finally, state law is pre-empted to the extent that it actually conflicts with federal law.' " *Id.*

As previously noted, Congress expressly gave the Federal Aviation Administration exclusive responsibility for regulating aircraft commerce. See *Burbank v. Lockheed Air Terminal* (1973), 411 U.S. 624, 633, 93 S.Ct. 1854, 1859–1860, 36 L.Ed.2d 547, 553–554 ("the pervasive nature of the scheme of federal regulation of aircraft noise * * * leads us to conclude that there is pre-emption"). To support its conclusion, the United States Supreme Court noted:

" 'Federal control is intensive and exclusive. Planes do not wander about in the sky like vagrant clouds. They move only by federal permission, subject to federal inspection, in the hands of federally certified personnel and under an intricate system of federal command. The moment a ship taxis onto a runway it is caught up in an elaborate and detailed system of controls.' " *Id.* at 633–634, 93 S.Ct. at 1860, 36 L.Ed.2d at 554, quoting *Northwest Airlines, Inc. v. Minnesota* (1944), 322 U.S. 292, 303, 64 S.Ct. 950, 956, 88 L.Ed. 1283, 1290 (Jackson, J., concurring). Therefore, appellants' nuisance action against Burlington has been preempted by the Federal Aviation Administration's exclusive control over airline regulation.

Moreover, as noted by the trial court, the appellants did not allege that Burlington's operations failed to comply with federal regulations. See *Griggs v. Allegheny Cty.* (1962), 369 U.S. 84, 82 S.Ct. 531, 7 L.Ed.2d 585 (holding that if a plane complied with all federal regulations, no action could be maintained against it). On the contrary, an affidavit of Burlington's senior vice president of air operations was admitted. That affidavit claimed that Burlington's operations are currently in compliance with federal regulations. Therefore, no action can be maintained against Burlington, and the trial court properly granted summary judgment.

Accordingly, we overrule appellants' sole assignment of error.

## PORT AUTHORITY'S CROSS–ASSIGNMENT OF ERROR

"The trial court erred in failing to grant the Port Authority summary judgment based on tort immunity provided by Ohio Rev.Code Chapter 2744, a complete defense to plaintiffs' tort claims for common law nuisance."

As we previously noted in appellants' sole assignment of error, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable

minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. Civ.R. 56(C); *Howard, supra,* 70 Ohio St.3d at 589, 639 N.E.2d at 1192–1193; *State ex rel. Parsons, supra,* 68 Ohio St.3d at 511, 628 N.E.2d at 1379–1380; *Turner, supra,* 67 Ohio St.3d at 339–340, 617 N.E.2d at 1125–1126.

The port authority maintains that it is immune from liability because it is a political subdivision.[13] Specifically, the port authority argues that it is immune under R.C. Chapter 2744 because its acts in expanding the Toledo Express Airport and leasing to Burlington were governmental functions.[14]

R.C. 2744.02(A)(1) provides that political subdivisions generally are not liable for damages when performing a governmental or proprietary function. Additionally, R.C. 2744.03 contains defenses that may be asserted to establish nonliability. The subsections relevant to the present case are R.C. 2744.03(A)(3) and (5).

R.C. 2744.03(A)(3) grants a political subdivision immunity where the act that caused the claim of liability was within the discretion of the employee with respect to "policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee." R.C. 2744.03(A)(5) provides that a political subdivision is "immune from liability if the injury * * * resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner."

The port authority claims that its decision to expand the Toledo Airport and lease to Burlington was a policy decision. Therefore, the port authority contends that its acts are immune from any liability.

However, the Ohio Supreme Court has drawn a distinction between a decision to engage in an activity and the implementation of that decision. See *Franks v. Lopez* (1994), 69 Ohio St.3d 345, 349, 632 N.E.2d 502, 505–506 ("the implementation of that [policy] decision is not immune from liability"). Once a decision has been made to engage in a certain activity, that political subdivision will be liable for any negligence occurring during the implementation of that activity. *Marrek v. Cleveland Metroparks* (1984), 9 Ohio St.3d 194, 196, 9 OBR 508, 509–510, 459 N.E.2d 873, 875–876.

**13.** R.C. 2744.01(F) defines a "political subdivision" as "a municipal corporation, township, county, school district, or other body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state."

**14.** R.C. 2744.01(C)(2)(e) defines a "governmental function" as "[t]he regulation of the use of, and the maintenance and repair of * * * public grounds."

The port authority's initial decision to expand the Toledo Express Airport and to lease to Burlington was a decision that is immune from liability. However, the record reflects that there is a genuine issue of fact about whether the implementation of the port authority's decision resulted in creating a private nuisance.[15] If the implementation of the port authority's decision did result in creating a nuisance for appellants, then the port authority would not be immune from liability under R.C. Chapter 2744. See *Griggs v. Allegheny Cty.* (1962), 369 U.S. 84, 89, 82 S.Ct. 531, 533–534, 7 L.Ed.2d 585, 588–589 (holding that the local authority, as the promoter, owner, and lessor of the airport, is the one who takes and therefore is responsible for any consequences resulting from low-flying aircraft); 8A American Jurisprudence 2d (1997) 107–109, Aviation, Section 103 (an airport that unreasonably interferes with the use and enjoyment of adjacent property can constitute a nuisance even though the airport is operating in compliance with federal and state law). Therefore, having found a genuine question of material fact about whether a nuisance resulted from the port authority's decision to lease to Burlington, we must sustain the trial court's decision not to grant summary judgment in the present case.

Accordingly, we overrule the port authority's cross-assignment of error.

For the aforementioned reasons, we affirm the judgment of the Fulton County Common Pleas Court granting summary judgment to Burlington and denying summary judgment to the port authority.

*Judgment affirmed.*

KERNS and EVANS, JJ., concur.

JOSEPH D. KERNS, J., retired, of the Second Appellate District, sitting by assignment.

RONALD E. HADLEY and JOHN R. EVANS, JJ., of the Third Appellate District, sitting by assignment.

---

15. None of the parties to this action dispute that Burlington's arrival at the Toledo Airport resulted in increased air traffic over appellants' homes.