DECISION AND JUDGMENT ENTRY
{¶ 1} Community Hospitals of Ohio ("CHO") and Community Health Plan of Ohio ("CHPO") appeal the Hocking County Court of Common Pleas' denial of their motion for a stay, pending arbitration, of the proceedings initiated against them by Hocking Valley Community Hospital ("Hocking"). CHO and CHPO contend that the trial court abused its discretion when it declined to stay the proceedings despite the arbitration clause contained in the CHPO Termination Agreement that Hocking executed. Because we find that the Termination Agreement is enforceable against Hocking, and further find that the dispute in this case relates to the Termination Agreement, we agree. Additionally, we find that CHO and CHPO did not waive their right to enforce the arbitration clause by first moving for a change of venue. Accordingly, we reverse the judgment of the trial court.
 I. {¶ 2} Hocking was one of several member hospitals of CHO, a non-profit corporation organized by the hospitals to offer managed healthcare to businesses in the hospitals' respective areas. CHO owns CHPO, a non-profit operator of a licensed health-insuring corporation. CHPO established a network of participating health care providers who agreed to accept discounted fees for services rendered to plan enrollees. Hocking, in addition to being a member of CHO, was a participating provider with CHPO.
 {¶ 3} Pursuant to an Indemnity Agreement between CHO, CHPO, and Hocking, CHO and CHPO agreed to pay Hocking for health care services rendered to enrollees who chose Hocking as their primary care provider ("Hocking Enrollees"). The Indemnity Agreement also provided a formula for determining whether Hocking owed a debt to CHPO for certain health care costs arising from services rendered to Hocking Enrollees.
 {¶ 4} In February 2000, Hocking executed the CHO Membership Transfer Agreement ("Transfer Agreement"), pursuant to which Hocking and several other hospitals agreed to transfer their CHO membership interests to Licking Memorial Hospital ("Licking"). The Transfer Agreement required each hospital to notify Licking whether it intended to continue acting as a participating provider with CHPO. Hospitals wishing to discontinue their participating provider relationship with CHPO were required to execute a CHPO Termination Agreement ("Termination Agreement"). Finally, the Transfer Agreement provided that if a hospital executed the Termination Agreement, then CHPO would satisfy government regulatory obligations to notify hospital enrollees of the termination.
 {¶ 5} The Termination Agreement provided that the Indemnity Agreement would remain in effect until all of the hospital's enrollees either terminated their enrollment in CHPO or were assigned to another member of CHO which agreed to assume indemnity obligations of those enrollees. Additionally, the Termination Agreement amended the Indemnity Agreement regarding the characterization of monies owed by the hospital to CHPO under the Indemnity Agreement and the calculation of monies owed for certain services rendered to hospital enrollees. The Termination Agreement also contained a forum-selection clause for litigation and a clause requiring arbitration of any dispute "arising out of or relating to this [Termination] Agreement."
 {¶ 6} Hocking executed the Termination Agreement. The Termination Agreement contained a provision stating that it was not valid until executed by all parties. Despite this provision and the fact that CHO and CHPO never executed the Termination Agreement, the parties proceeded as if the Termination Agreement was in effect. Specifically, the parties do not dispute that Hocking ceased to act as a participating provider with CHPO, and CHPO notified the Hocking Enrollees of the termination.
 {¶ 7} After Hocking ceased providing services to CHPO enrollees, CHPO prepared a final accounting reflecting the amount Hocking owed to CHPO. Hocking disputed the debt. Hocking filed a complaint in the trial court asserting claims for declaratory judgment, breach of contract, and an accounting relating to the Indemnity Agreement.
 {¶ 8} CHO and CHPO filed a motion for a change of venue pursuant to the forum selection clause contained in the Termination Agreement. One week later, CHO and CHPO filed a motion to stay the trial court's proceedings pending arbitration, citing the arbitration clause in the Termination Agreement. Hocking argued that the Termination Agreement never became effective, because CHO and CHPO never executed it. Hocking also argued that its complaint relates solely to the Indemnity Agreement, which does not contain an arbitration clause. Finally, Hocking argued that CHO and CHPO waived their right to enforce the arbitration clause because they filed a motion for a change of venue prior to filing their motion for a stay of the proceedings.
 {¶ 9} The trial court denied CHO and CHPO's motions for a change of venue and for a stay of the proceedings pending arbitration. The trial court did not articulate its rationale for denying the motions. CHO and CHPO appeal the denial of their motion to stay the proceedings, asserting the following assignment of error: "The trial court erred when it denied Appellants' motion to stay proceedings pending arbitration pursuant to section 2711.02 of the Ohio Revised Code."
 II. {¶ 10} CHO and CHPO assert that the trial court erred in denying their motion to stay the proceedings pending arbitration. The denial of a motion to stay proceedings pending arbitration is a final appealable order pursuant to R.C. 2711.02(C).
 {¶ 11} The parties raise three issues relating to CHO and CHPO's assignment of error. First, the parties contest whether the Termination Agreement ever became effective absent signatures from representatives of CHO and CHPO. Second, they contest whether the dispute in this case "relates to" the Termination Agreement under the arbitration clause. Questions regarding the existence of a contract and its meaning are questions of law, which we review de novo. See Continental CondominiumUnit Owners Assn. v. Howard E. Ferguson, Inc. (1996), 74 Ohio St.3d 501,502. Finally, the parties dispute whether CHO and CHPO waived their right to enforce the arbitration clause when they first filed a motion for a change of venue. The question of whether a party has waived the right to enforce an arbitration clause is one within the trial court's discretion, and we will not reverse the trial court's decision absent an abuse of that discretion. Harsco Corp. v. Crane Carrier Co. (1997),122 Ohio App.3d 406, 410; Smith v. Kreepy Krauly USA, Scioto App. No. 00CA2709, 2001-Ohio-2358.
 A. {¶ 12} CHO and CHPO contend that the Termination Agreement is a valid, enforceable agreement despite the fact that they did not execute the contract. CHO and CHPO contend that performance substitutes for execution of the Termination Agreement in this case. Hocking contends that the Termination Agreement is not an enforceable agreement because CHO and CHPO did not execute it.[1]
 {¶ 13} A contract is a description of an agreement or obligation, whether verbal or written, in which one party becomes bound to another to pay a sum of money, perform an act, or omit to perform an act. TerexCorp. v. Grim Welding Co. (1989), 58 Ohio App.3d 80, 82. A contract is not valid unless a "meeting of the minds" of the parties occurs via an offer and an acceptance of the offer. Noroski v. Fallet (1982),2 Ohio St.3d 77, 79.
 {¶ 14} Generally, an "offer" is defined as "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." Leaseway Distribution Centers, Inc. v. Ohio Dept. of Adm.Serv. (1988), 49 Ohio App.3d 99, 105, citing Restatement of the Law 2d, Contracts (1981), 71, 24. Likewise, conduct sufficient to show agreement, including performance, constitutes acceptance. Nagle Heating Air Conditioning Co. v. Heskett (1990), 66 Ohio App.3d 547, 550;American Bronze Corp. v. Streamway Products (1982), 8 Ohio App.3d 223,227.
 {¶ 15} Thus, a party may prove the existence of an enforceable contract not only through a written agreement, but also "in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." G. Herschman Architects,Inc. v. Ringco Mfg. Co., Inc. (May 11, 1995), Cuyahoga App. No. 67758, quoting American Bronze at 227. "In contracts implied in fact, the meeting of the minds, manifested in express contracts by offer and acceptance, is shown by the surrounding circumstances which make it inferable that the contract exists as a matter of tacit understanding."G. Herschman, citing Legros v. Tarr (1989), 44 Ohio St.3d 6, 7.
 {¶ 16} Thus, the fact that a party has not executed a contract does not necessarily mean that a contract does not exist between the parties. Richard A. Berjian, D.O., Inc. v. Ohio Bell Telephone Co.
(1978), 54 Ohio St.2d 147, 151. If one party failed to execute a written contract, yet the parties proceeded to act as if the contract was in effect, the contract is enforceable. Nagle at 550. Performance can substitute for execution of a written contract against the party who did not execute the contract (Nagle at 550), as well as against the party who executed the contract (CME Fed. Credit Union v. Stultz (Nov. 9, 1999), Franklin App. No. 98AP1598; American States Ins. Co. v. Honeywell, Inc.
(Mar. 1, 1990), Cuyahoga App. No. 56552).
 {¶ 17} In this case, Hocking contends that the Transfer Agreement terminated the relationship between the parties, and that the Termination Agreement never took effect because CHO and CHPO never executed it. However, our examination of the contracts does not support Hocking's claim. The Transfer Agreement clearly stated that the transfer of Hocking's membership interests to Licking did not terminate Hocking's status as a participating provider with CHPO, and that Hocking needed to execute a termination agreement if it wished to terminate its participating provider relationship with CHPO.
 {¶ 18} Hocking executed the Termination Agreement. Although the Termination Agreement contains a paragraph stating that the agreement needed to be executed by all parties before it became effective, Hocking admits that it ceased to act as a participating provider with CHPO without first receiving an executed copy of the Termination Agreement from CHO and CHPO. Hocking does not dispute that CHPO notified Hocking Enrollees that Hocking terminated its participating provider relationship with CHPO and asked Hocking Enrollees to select a new primary care provider. Hocking does not contend that CHO or CHPO attempted to continue to treat it as a participating provider in any way. Thus, the parties all behaved in a manner consistent with the terms of the Termination Agreement, and inconsistent with the absence of such an agreement.
 {¶ 19} The conduct of the parties in this case indicates that all recognized the existence of the Termination Agreement. The parties' conduct was not only consistent with the terms of the Termination Agreement, but also inconsistent with the absence of such an agreement. Therefore, we find that the Termination Agreement took effect, and that it is enforceable against Hocking as a matter of law.
 B. {¶ 20} CHO and CHPO contend that the dispute in this case relates to the Termination Agreement, and therefore that the matter is subject to the arbitration clause in the Termination Agreement. Hocking contends that the dispute in this case relates solely to the Indemnity Agreement.
 {¶ 21} When parties to a contract have agreed in writing to arbitration of disputes, the trial court must, upon application of a party and being satisfied that the issue is referable to arbitration, stay its proceedings pending the arbitration. R.C. 2711.02(B). A strong presumption exists in favor of arbitration, and any ambiguities or doubts regarding the scope of the arbitration clause should be resolved in favor of arbitration. Sasaki v. McKinnon (1997), 124 Ohio App.3d 613, 616;Gaffney v. Powell (1995), 107 Ohio App.3d 315, 320.
 {¶ 22} The Termination Agreement provides that any "controversy, dispute or disagreement arising out of or relating to" the Termination Agreement shall be settled by arbitration if it cannot be resolved through mediation. The United States Supreme Court has defined "relating to" as "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with."Morales v. Trans World Airlines, Inc. (1992), 504 U.S. 374, 383,112 S.Ct. 2031, 2037, 119 L.Ed.2d 157, 167, citing Black's Law Dictionary (5 Ed. 1979) 1158. See, also, Kagy v. Toledo-Lucas Cty. Port Auth. (1998),126 Ohio App.3d 675, 680.
 {¶ 23} Hocking filed a complaint asserting claims for declaratory judgment, breach of contract, and an accounting, all pursuant to the Indemnity Agreement between Hocking, CHO, and CHPO. Hocking did not mention the Termination Agreement in its complaint. Nonetheless, CHO and CHPO contend that the complaint relates to the Termination Agreement. Specifically, CHO and CHPO point out that the Termination Agreement explicitly amends the Indemnity Agreement. In amending the Indemnity Agreement, the Termination Agreement defines the nature of the amount due to CHPO under the Indemnity Agreement ("any amounts due to CHPO under said Indemnity Agreement shall constitute a debt to CHPO, notwithstanding the fact that the Hospital's membership in CHO may have terminated * * *."). Additionally, the Termination Agreement delineates which expenses are chargeable to Hocking ("the Hospital's obligations under the Indemnity Agreement shall extend to any Health Care Expenses incurred by CHPO for services rendered to Hospital Enrollees after termination * * * which Health Care Expense arose from services performed while the Hospital Enrollee was covered by the Indemnity Agreement, * * *.").
 {¶ 24} Hocking's complaint in this case did not explicitly refer to the Termination Agreement. However, the complaint undoubtedly has some connection or association with the Termination Agreement. In particular, the Termination Agreement defines the nature of the debt and the extent to which certain items may be properly included in the amount charged to Hocking. Under the presumption favoring arbitration, and resolving any ambiguities in the scope of the Termination Agreement in favor of arbitration, we find that a dispute relating to the amount Hocking owes to CHPO constitutes a dispute relating to the Termination Agreement. Consequently, we find that the dispute falls within the scope of the arbitration clause as a matter of law.
 C. {¶ 25} Hocking contends that even if the Termination Agreement is enforceable and even if the dispute in this case falls within the scope of the arbitration clause, the trial court did not abuse its discretion in denying the motion for a stay pending arbitration because CHO and CHPO waived their right to arbitration by first filing a motion for a change of venue.
 {¶ 26} As we noted above, when reviewing a trial court's determination that a party has waived its right to arbitrate, we apply an abuse of discretion standard. Harsco, supra at 410. A finding that a trial court abused its discretion implies that the court acted unreasonably, arbitrarily or unconscionably. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
 {¶ 27} To prove that a defending party waived its right to arbitration, the plaintiff is required to demonstrate that the defendant "knew of an existing right to arbitration, see List Son Co. v.Chase (1909), 80 Ohio St. 42, and acted inconsistently with that right to arbitrate." Harsco at 414, quoting Phillips v. Lee Homes, Inc. (Feb. 17, 1994), Cuyahoga App. No. 64353. "The essential question is whether, based on the totality of the circumstances, the party seeking arbitration has acted inconsistently with the right to arbitrate." Harsco at 414. Failure to move for a stay of proceedings, coupled with a defendant's responsive pleadings, constitutes a waiver of the right to enforce an arbitration clause. Mills v. Jaguar-Cleveland Motors Inc. (1980), 69 Ohio App.2d 111,113.
 {¶ 28} To determine whether a defendant acted inconsistently with arbitration, the court should consider: "(1) any delay in the requesting party's demand to arbitrate via a motion to stay judicial proceedings and an order compelling arbitration; (2) the extent of the requesting party's participation in the litigation prior to its filing a motion to stay the judicial proceeding, including a determination of the status of discovery, dispositive motions, and the trial date; (3) whether the requesting party invoked the jurisdiction of the court by filing a counterclaim or third-party complaint without asking for a stay of the proceedings; and (4) whether the non-requesting party has been prejudiced by the requesting party's inconsistent acts." Harsco at 414, quotingPhillips, supra, and citing Rock v. Merrill, Lynch, Pierce, Fenner Smith, Inc. (1992), 79 Ohio App.3d 126; Brumm v. McDonald Co.Securities, Inc. (1992), 78 Ohio App.3d 96.
 {¶ 29} In this case, Hocking contends that CHO and CHPO waived the right to arbitrate by first filing a motion for a change of venue. However, a motion for a change of venue constitutes minimal participation in the proceedings; CHO and CHPO did not cause discovery to commence and did not file any dispositive motions, and no trial date was imminent. The trial court had not yet ruled on the motion for change of venue when CHO and CHPO filed their motion to compel arbitration. CHO and CHPO's delay in filing the motion was also minimal; they filed the motion for a stay just one week after filing their motion for a change of venue. CHO and CHPO did not invoke the jurisdiction of the court by filing a counterclaim or third-party complaint before requesting the stay. Finally, Hocking suffered little, if any, prejudice as a result of CHO and CHPO filing a motion for a stay one week after filing a motion for a change of venue.
 {¶ 30} Based on the factors outlined above, we find that CHO and CHPO did not act in a manner inconsistent with seeking arbitration. Thus, we find that if the trial court did, in fact, find that CHO and CHPO waived arbitration, that determination constituted an abuse of discretion.
 III. {¶ 31} In sum, we find that the Termination Agreement is enforceable, that the dispute in this case relates to the Termination Agreement and hence falls within the scope of the arbitration clause, and that CHO and CHPO did not waive their right to arbitrate the dispute by first filing a motion for a change of venue. Accordingly, we reverse the judgment of the trial court.
JUDGMENT REVERSED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE REVERSED and the cause remanded to the trial court for further proceedings consistent with this opinion, costs herein taxed to appellee.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Hocking County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Evans, P.J.: Concurs in Judgment only.
Harsha, J.: Concurs in Judgment and Opinion.
[1] Hocking also asserts that CHO and CHPO waived the argument that the Termination Agreement is valid without execution because CHO and CHPO did not argue in the trial court that Hocking waived the execution requirement. Upon review of the record, we find that CHO and CHPO clearly raised this issue in the trial court.